UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAUNDRA WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:08CV1124 TIA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court under 42 U.S.C. §1383(c)(3) for judicial review of the denial of Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act.  The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## I.  Procedural History

On April 27, 2005, Plaintiff filed an application for Supplemental Security Income (SSI), alleging disability beginning July 12, 2002 due to diabetes, arthritis, HTN, and stroke. (Tr. 39, 80-82) The application was denied, and Plaintiff requested a hearing by an Administrative Law Judge (ALJ). (Tr. 39-43, 44)  On January 30, 2007, Plaintiff testified at a hearing before an ALJ. (Tr. 282-97)  In a decision dated May 31, 2007, the ALJ determined that Plaintiff was not under a disability at any time through the date of decision.  (Tr. 22-34)  On October 20, 2007, the Appeals Council remanded the case to the ALJ.  (Tr. 36-38) Plaintiff appeared and testified before the ALJ again on December 12, 2007.  (Tr. 298-314) On February 12, 2008, the ALJ found that Plaintiff was not under a disability at any time through the date of the decision.  (Tr. 13-20) Thereafter, the Appeals Council denied Plaintiff's request for review on July 11, 2008. (Tr. 6-7)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the first hearing before the ALJ on January 30, 2007, Plaintiff appeared with counsel. Plaintiff testified that she lived in an apartment with a friend. She was 49 years old at the time of the hearing, and she measured 5 feet, 7 inches tall and weighed 214 pounds. She attributed a recent weight gain to diabetes. Plaintiff had never been married but had children over 18 years old. She completed the eighth grade, after which she had a baby. Plaintiff took some classes but never received her GED. Plaintiff's work history consisted of temporary jobs on assembly lines in factories and work as a laundry cleaner. Plaintiff also worked as a housekeeper at a Holiday Inn. She quit that job in 2002 because her legs, ankles, and knees swelled such that she was unable to walk. Plaintiff stated that her diabetes prevented her from standing too much. In 2004, Plaintiff tried to work through vocational rehabilitation but never made it through one day. Plaintiff testified that, after an hour of housekeeping duties, her legs, ankles, and knees hurt, and her arm was stiff. (Tr. 285-90)

Plaintiff stated that she could stand for no more than an hour, walk for no more than an hour, and sit for no more than an hour. Sitting put pressure on her hips, which was a result of arthritis. Plaintiff took Hydrocodone for the pain. With regard to her diabetes, Plaintiff took medicine and checked her sugar levels. She testified that her numbers were not good. When her blood sugars were high, she experienced dizziness, blurry vision, and fatigue. The diabetes also caused heaviness in her legs, swelling in her ankles, and numbness and tingling in her toes. Plaintiff used eye drops daily for glaucoma in her left eye. Her blood pressure was stable with medication. Plaintiff also testified that she had issues with her neck and right arm. Specifically, she experienced pain from her neck to her fingers, which was so bad at times that her arm was useless. She could raise her arm to shoulder level but not above. In addition, Plaintiff stated that she was unable to grip with her right hand because

2

of pain from her shoulder to her hand and fingers. (Tr. 290-94)

Plaintiff further testified that she had an MRI scheduled but she needed to make an appointment. She stated that she spent most of her time in bed lying down. She did very little cleaning or cooking. She could not cook big meals because standing by the stove aggravated her hips. Instead, Plaintiff cooked simple, microwave meals. She did not do laundry or go to the grocery store. Her daughter and her friend did most of the work. Specifically, Plaintiff's daughter took her to the grocery store and doctor's appointments. Plaintiff walked a block to church. Although she could drive, she chose not to. Plaintiff experienced problems sleeping due to pain. She woke up after three hours to take more pain medication. Plaintiff testified that she went to the Myrtle Hilliard Davis Clinic for treatment. She participated in a homeless program, which paid for doctor's visits and medication. Plaintiff currently saw Dr. Hanna. (Tr. 294-97)

Plaintiff testified at a second hearing held on December 12, 2007. Her attorney was present as well. Plaintiff was 50 years old, measured 5 feet 6 3/4 inches, and weighed 215 pounds. She lived with a friend on a temporary basis because she had nowhere else to go. Plaintiff last worked as a housekeeper at the Holiday Inn. Although she tried vocational rehabilitation, the training did not work out. Plaintiff had not worked since the last hearing. (Tr. 301-302)

Plaintiff testified that her blood sugar levels continued to fluctuate and that her recent counts were too high. The doctors continued to adjust her medications, which included insulin and Metformin. Plaintiff stated that her medications made her drowsy and dizzy, causing her to lie down for about 2 hours in the morning. She tried to perform daily activities but could not do much because of the arthritis in her hips. Plaintiff also testified that she experienced tingling in her toes, along with tingling and numbness in her fingers and thumbs. In addition, Plaintiff's vision was worsening.

3

Plaintiff had been referred to a neurosurgeon for her neck and low back pain. She testified that she experienced pain in her neck every day. The pain radiated from her neck, through her right arm, and to her thumb and finger. Plaintiff was unable to lift her right arm at or above shoulder level, and she stated that she had problems gripping or holding things with her right hand. Although she was left-handed, Plaintiff needed help with tasks requiring two hands. Further, Plaintiff complained of low back pain and arthritis in both hips. She had a prescription for a cane, which she needed to help her walk. Plaintiff stated that she could only walk 2 ½ to 3 blocks without a cane. However, she did not feel stable when not using the cane. Plaintiff believed she could stand for 30 minutes before her hips flared up and the arthritis in her left knee caused stiffness. (Tr. 302-308)

Plaintiff also testified regarding her depression. She tried to commit suicide with a knife to her wrist. Plaintiff went to the Metro Psychiatric Center for 72-hour observation. She then stayed at Queen of Peace for a month. Plaintiff continued to see her psychiatrist, Dr. Gonzalez, and her counselor, Dr. May. (Tr. 308-309)

On a typical day, Plaintiff woke up in the morning, took her medicine, and went back to bed for a couple of hours. She then tried to eat something easy. In the afternoon, Plaintiff mostly sat but sometimes dusted or washed a few dishes. She took her medication again in the evening, after which she would lie down. Plaintiff was able to dust everything with her left hand; however, she could not vacuum or sweep because it caused her arthritis to flare up. In addition, Plaintiff could not stand too long at the sink because of her hips and knee. She did not drive, but she was able to walk three blocks to the grocery store. She brought a cart which helped her with walking. While at the store, Plaintiff sat down, and her daughter bought the items on Plaintiff's list. Plaintiff testified that it was too tiresome to walk around the store. When she returned from the store, Plaintiff was tired and

4

winded. Her hips hurt, which required her to sit down. Plaintiff's friend did all the cooking, although Plaintiff sometimes helped with small items like rice or potatoes. She testified that she was unable to sleep at night. Plaintiff tossed and turned because of pain in her right arm. Dr. Gonzales prescribed Trazodone, but recently switched Plaintiff's medication to Seroquel. Plaintiff stated that her sleep had improved. (Tr. 309-13)

### III. Medical Evidence

On February 4, 2005, Plaintiff complained of bilateral leg numbness for 1 ½ months and bilateral knee pain. Dr. Charles Lieu with Saint Louis ConnectCare assessed diabetes mellitus, hypertension with controlled blood pressure, and high cholesterol. (Tr. 160-61)

On March 16, 2005, Plaintiff was admitted to Barnes Jewish Hospital with complaints of numbness on her left side. A CT scan of the head was normal, and an MRI of the brain was also normal. (Tr. 172-178) Plaintiff had follow-up appointments with Saint Louis ConnectCare in April and May of 2005. Her diagnoses included diabetes mellitus, hypertension, high cholesterol, obesity, and degenerative joint disease/osteoarthritis. (Tr. 162-66)

Dr. Elbert Carson performed a consultative examination on July 11, 2005. Plaintiff complained of pain in her left knee, high blood pressure, glaucoma in her left eye, and diabetes. Dr. Carson also noted that Plaintiff had a slight stroke in May. Dr. Carson diagnosed arthritis involving mostly the left knee, which caused her to limp; high blood pressure which was controlled with medication; glaucoma of the left eye, with drops and a recommendation to see her eye doctor in one month to check pressure; diabetes which was not well-regulated with insulin and oral anti-diabetic medication; and a mild overweight condition. (Tr. 179-83)

Records from the Myrtle Hillard Davis Comprehensive Health Center between April 2006 and

5

April 2007 reveal continued complaints of weakness, numbness, and tingling in the neck, right shoulder, and right arm which radiated to her right hand, fingers, and thumb. Plaintiff also complained of pain in her left hip which radiated to her left knee. (Tr. 196-204, 222-45) Diagnoses included type II diabetes mellitus, poorly controlled; hypertension; high cholesterol; osteoarthritis. (Id.)

Plaintiff visited the ER at Barnes-Jewish Hospital on May 7, 2006, complaining of neck and right upper extremity pain, weakness, and numbness radiating to all right digits. Plaintiff was diagnosed with cervical strain with associated right upper extremity parasthesias. (Tr. 205-18) An x-ray of Plaintiff's cervical spine taken on May 9, 2006, revealed an undisplaced hairline fracture of the left transverse process of C7; moderate degenerative disc disease at C4-C5; early minimal degenerative disc disease at C5-C6 and C6-C7; and abnormal straightening with minimal scoliosis of lower cervical spine. (Tr. 204)

On April 27, 2007, Dr. Laila Hanna completed a Physical Residual Functional Capacity Questionnaire. Dr. Hanna noted that she had been treating every 3 months since 2002. Dr. Hanna diagnosed diabetes mellitus, hypertension, and high cholesterol, with a fair prognosis. Symptoms included aching all over and right arm pain which was persistent and worsening. Plaintiff was unable to raise her right arm above her head, and she had painful, limited rotation with light weakness in her hand grip. Dr. Hanna further stated that depression affected Plaintiff's physical condition. Dr. Hanna opined that Plaintiff's pain or other symptoms would occasionally interfere with the attention and concentration required for simple work tasks. However, Plaintiff was capable of tolerating low stress jobs. Dr. Hanna opined that Plaintiff could walk 3 blocks easily, sit for 1 hour, stand for 2 hours, and sit and stand/walk a total of 2 hours in an 8-hour workday. In addition, Plaintiff needed a job that

allowed periods of walking around, permitted shifting positions, and allowed unscheduled breaks. Plaintiff could lift 10 pounds occasionally and could frequently perform activities requiring neck flexion. Although Dr. Hanna believed Plaintiff could frequently twist, she could only occasionally stoop, crouch/squat, and climb stairs. She should rarely climb ladders. Plaintiff had significant limitations with reaching, handling, and fingering with her right arm. (Tr. 232-36)

On May 11, 2007, Plaintiff was examined at Saint Louis ConnectCare Neurology. She complained of numbness, weakness, and pain from her right shoulder to her right arm. Plaintiff was diagnosed with right C5-C6 radiculopathy secondary to foraminal stenosis and C4-C5 radiculopathy secondary to foraminal stenosis. The treatment plan included neck traction, smoking cessation, and increased diabetic control. (Tr. 252-263)

On July 30, 2007, Plaintiff was seen at the Hopewell Center for complaints of depression over the last 4 or 5 years. Plaintiff admitted that she had not received any formal psychiatric treatment. Dr. Alicia Gonzalez diagnosed polysubstance dependence in early remission, depressive disorder, diabetes, hypertension, high cholesterol, arthritis, and a GAF of 45. Plaintiff was to continue taking Cymbalta and Trazodone. (Tr. 265-73)

On August 3, 2007, Plaintiff continued to complain of right neck, shoulder, and arm pain that worsened when lying on that side or lying flat. She also complained of difficulty twisting off jar lids. The neurologist at Saint Louis ConnectCare diagnosed right C5-C6 radiculopathy. (Tr. 247-50)

Plaintiff returned to the Hopewell Center on November 5, 2007 and December 4, 2007 for individual counseling. She continued to exhibit signs of depression. (Tr. 278-79)

An Addendum to Medication List submitted on November 27, 2007 noted that Dr. Gonzalez, Plaintiff's psychiatrist, increased her Cymbalta to 60 mg, twice daily, and replaced the Trazodone

with Seroquel to help with sleep. On December 6, 2007, Dr. Hanna prescribed a cane. (Tr. 146-47)

## IV. The ALJ's Determination

As stated in the Procedural History, the Appeals Council remanded the ALJ's decision dated May 31, 2007 for further consideration and evaluation, including a directive to obtain additional medical evidence and evidence from a vocational expert. (Tr. 36-9) In the February 12, 2008 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2005. Further, the ALJ found that Plaintiff was not fully credible regarding the severity of her limitations. Plaintiff did not have a severe impairment of depression and had only slight limitations to activities of daily living and no limitations to social functioning and concentration, persistence, or pace. Further she had no episodes of decomposition. The medical evidence established that she had severe impairments of degenerative disc disease of the cervical spine, arthritis, and diabetes. However, Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 19)

The ALJ further determined that Plaintiff had the maximum residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently. She could sit, stand, and walk for six hours. Plaintiff was unable to perform her past relevant work. The ALJ noted Plaintiff's status as an individual closely approaching advanced age, her eighth grade or limited education, and her lack of past relevant work experience. He then relied on the medical-vocational guidelines (grids) to determine that jobs existed in the national economy which Plaintiff could perform, considering her vocational factors and RFC. The ALJ thus concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of the decision. (Tr. 19)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that she is not engaged in substantial gainful activity; (2) that she has a severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings

made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may

---

[1]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

support the opposite conclusion. Marciniak 49 F.3d at 1354.

## VI.  Discussion

In her Brief in Support of the Complaint, the Plaintiff asserts that the ALJ did not properly formulate Plaintiff's RFC because he failed to fully and fairly develop the record as directed by the Appeals Council and failed to properly consider the treating physician's opinion. In addition, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consult a vocational expert.  The Defendant, on the other hand, maintains that the ALJ properly discredited Plaintiff's treating physician's opinion and properly formulated Plaintiff's RFC.  Further, Defendant asserts that the ALJ properly determined that Plaintiff's mental impairment was not severe and properly relied on the grids.  The undersigned agrees with the Plaintiff that the ALJ erred in his RFC assessment and in failing to seek testimony from a vocational expert.

### A.  The ALJ failed to properly formulate Plaintiff's RFC

Plaintiff first argues that the ALJ failed to properly formulate Plaintiff's RFC.  Specifically, Plaintiff maintains that the Appeals Council directed the ALJ to fully and fairly develop the record, which the ALJ failed to do.  Further, Plaintiff contends that the ALJ did not properly consider the medical opinion of Plaintiff's treating physician.  The Defendant asserts that the ALJ properly discredited Dr. Hanna's opinion because it was inconsistent with the record as a whole.  Thus, the Defendant argues that the ALJ properly formulated Plantiff's RFC.

The undersigned finds that the ALJ erred in his RFC assessment and that the case should be remanded for further review.  Residual Functional Capacity (RFC) is a medical question, and the ALJ's assessment must be supported by substantial evidence.  Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (citations omitted).  RFC is defined as the most that a claimant can still do in a

work setting despite that claimant's limitations. 20 C.F.R. § 416.945(a)(1). "Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (Soc. Sec. Admin. July 2, 1996) (emphasis present). Further, the evaluation must realistically evaluate a claimant's ability to work in the real world under competitive and stressful conditions and not his or her "'ability merely to lift weights occasionally in a doctor's office.'" Juszczyk v. Astrue, 542 F.3d 626, 633 (8th Cir. 2008) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)). The ALJ has the responsibility of determining a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations.'" Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "An 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Sieveking v. Astrue, No. 4:07 CV 986 DDN, 2008 WL 4151674, at *9 (E.D. Mo. Sept. 2, 2008).

Other than Dr. Hanna's assessment, the medical record is devoid of any evidence regarding Plaintiff's ability to lift, stand, sit, walk, and reach on a regular and continual basis. Although the ALJ acknowledged that Dr. Hanna was Plaintiff's treating physician, the ALJ refused to give Dr. Hanna's opinion controlling weight, finding that the objective medical evidence contradicted the opinion. However, an ability to heel-toe walk during an examination is insufficient to demonstrate an ability to stand and walk during an 8 hour workday. Juszczyk v. Astrue, 542 F.3d 626, 633 (8th Cir. 2008).

12

In addition, the ALJ fails to explain how a supple neck, along with normal tone and coordination with good fine finger movement are substantial evidence of Plaintiff's ability to work. None of the reports upon which the ALJ relies address Plaintiff's ability to perform work-related functions. Thus, the undersigned will remand the case for further development of the record. See Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000) (reversing and remanding case where ALJ failed to seek an RFC opinion from treating physicians or order consultative examinations and instead drew upon his own inferences from the medical reports). Specifically, the ALJ shall contact Dr. Hanna and any other treating sources and request additional evidence and/or clarification regarding Plaintiff's ability to do work despite her impairments in order to properly formulate Plaintiff's RFC.

### B. Vocational Expert Testimony

The undersigned also agrees with the Plaintiff's argument that the ALJ's determination is not supported by substantial evidence because the ALJ failed to utilize a VE in light of Plaintiff's non-exertional impairments. The ALJ found Plaintiff's severe impairments of degenerative disc disease of the cervical spine, arthritis, and diabetes. (Tr. 19) In reaching his decision that Plaintiff could perform the full range of light work, the ALJ relied on the Medical-Vocational Guidelines ("grids") instead of consulting a VE. The ALJ acknowledged the Appeals Council's direction to obtain VE testimony but found such testimony "unnecessary." (Tr. 18)

An ALJ may rely on the grids to find a plaintiff not disabled where the plaintiff does not have non-exertional impairments or where the non-exertional impairment does not diminish the plaintiff's RFC to perform the full range of activities listed in the grids. Muncy v. Apfel, 247 F.3d 728, 735 (8th Cir. 2001) (citing Holz v. Apfel, 191 F.3d 945, 947 (8th Cir. 1999)). "However, when a claimant is limited by a non-exertional impairment, such as pain or mental incapacity, the Commissioner may not

13

rely on the Grids and must instead present testimony from a vocational expert to support a determination of no disability." Gray v. Apfel, 192 F.3d 799, 802 (8th Cir. 1999). Here, the ALJ determined that Plaintiff's non-exertional impairments of pain and depression were not credible. However, the medical records do not support this finding. Plaintiff received ongoing mental healthcare from the Hopewell Center for depression, along with prescriptions for psychotropic drugs. (Tr. 265-79) Further, most recent progress notes from the Neurology department at Saint Louis ConnectCare demonstrate limitations due to pain. (Tr. 248)

Therefore, the undersigned finds that the ALJ erred in failing to elicit testimony from a VE regarding Plaintiff's ability to perform work existing in significant numbers in the national economy, despite Plaintiff's non-exertional impairments of pain and depression. As a result, the ALJ formulated an RFC that was not supported by substantial evidence and then erroneously applied the grids. Therefore, the Commissioner's decision should be reversed and remanded to the ALJ to adduce testimony from a VE regarding Plaintiff's non-exertional impairments and their impact on her ability to perform jobs in the national economy. See Yeley v. Astrue, No. 1:07CV148 LMB, 2009 WL 736701, at *13 (E.D. Mo. March 18, 2009).

Accordingly,

**IT IS HEREBY ORDERED** that this cause be **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order. A separate Judgment of Remand is entered this same date.


/s/ Terry I. Adelman

UNITED STATES MAGISTRATE JUDGE

Dated this   29th   day of September, 2009.